Sarah M. Brown (MT Bar No. 55888388)
Center for Biological Diversity
317 E. Spruce St.
Missoula, MT  59802
(406) 609-0923
sbrown@biologicaldiversity.org

Andrea Zaccardi (ID Bar No. 8818)
Center for Biological Diversity
P.O. Box 469
Victor, ID  83455
(303) 854-7748
azaccardi@biologicaldiversity.org

Collette Adkins (MN Bar No. 035059X)
Center for Biological Diversity
P.O. Box 595
Circle Pines, MN  55014-0595
(651) 955-3821
cadkins@biologicaldiversity.org

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, a non-profit organization, | |
| Plaintiff, | |
| v. | Case No. _____ |
| BRIAN NESVIK, in his official capacity as Director of U.S. Fish and Wildlife Service; | |

UNITED STATES FISH AND WILDLIFE SERVICE; and DOUG BURGUM, in his official capacity as U.S. Secretary of the Interior,

Federal Defendants.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.      Plaintiff Center for Biological Diversity ("the Center") brings this case challenging the U.S. Fish and Wildlife Service ("Service") for failure to designate critical habitat for the wolverine in compliance with nondiscretionary deadlines set forth in the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq*. The Center brings this action under Section 11(g) of the ESA, 16 U.S.C. § 1540(g).

2.      The North American wolverine (*Gulo gulo luscus*) is a rare and elusive medium-sized carnivore and the largest terrestrial member of the Mustelidae family. Wolverines are adapted to travel long distances, maintain large territories in remote areas, and are dependent on deep snow to den and survive.

3.      In North America, wolverines historically inhabited much of the northern portion of the continent, extending southwards into the

Great Lakes region, the northern Rocky Mountains, and the Cascade Mountains of the United States, and potentially as far south as the southern Rocky Mountains. However, following widespread trapping and predator poisoning programs in the late 1800s and early 1900s, the wolverine was extirpated in much of the contiguous United States. Currently, wolverines are known to reproduce in the northern Rocky Mountains in Idaho, Montana, and Wyoming, and the Cascade Mountains of Washington.

4.    The contiguous United States Distinct Population Segment ("DPS") of the North American wolverine was listed as a threatened species on November 30, 2023, due to the "ongoing and increasing impacts of climate change and associated habitat degradation and fragmentation." 88 Fed. Reg. 83726. The Service concurrently concluded that critical habitat was not determinable at that time.

5.    When critical habitat is not determinable, the Service has an additional year to publish a critical habitat designation. 16 U.S.C. § 1533(b)(6)(C)(ii). Thus, the ESA required the Service to designate critical habitat by November 30, 2024. As of the filing of this Complaint – over two years after the species was listed – the Service has yet to

designate critical habitat for the wolverine and continues to be in violation of the ESA.

6. To ensure that the wolverine receives the lifesaving habitat protections it needs and is entitled to under the ESA, the Center brings this action for declaratory and injunctive relief. Specifically, the Center seeks an order declaring that the Service violated the ESA by failing to timely designate critical habitat for the contiguous United States DPS of the North American Wolverine and respectfully requests this Court compel the Service to issue a rule designating critical habitat.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as a defendant), and 16 U.S.C. §§ 1540(c), (g) (citizen suit provision of the Endangered Species Act). An actual controversy exists between the parties under 28 U.S.C. § 2201.

8. This Court has authority to grant the requested relief pursuant to 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief) and 16 U.S.C. § 1540(g) (Endangered Species Act).

9. Venue lies in this Court pursuant to 16 U.S.C. §

1540(g)(3)(A) and 28 U.S.C. § 1391(e) because this civil action is brought against agencies of the United States and employees of the United States acting in their official capacities under the color of legal authority and the outstanding critical habitat designation giving rise to Plaintiff's claim occurs within this district. Plaintiff also maintains an office in this judicial district.

## PARTIES

10.    Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, nonprofit conservation organization headquartered in Tucson, Arizona, and supported by over 93,000 members, including residents in counties where the wolverine resides. The Center and its members wish to see viable wolverine populations in suitable habitat in all significant portions of the wolverine's historic range in the contiguous United States, including in the Northern Rocky Mountains, Southern Rocky Mountains, and Cascade Mountains of the Pacific Northwest. To realize that vision, the Center and its partners secured protections for the wolverine through litigation, culminating in the wolverine's designation as threatened on November 30, 2023.

11.    The Center's members regularly seek out opportunities to

view the wolverine in its habitat. For example, Center member Noah Greenwald has backcountry skied in areas occupied by wolverines, including the North Cascades in Washington, the Absaroka-Beartooth Wilderness in Montana and Wyoming, and the Wallowa Mountains in Oregon, in the hope of seeing a wolverine and to appreciate the high mountain landscapes, where these fierce predators live. He has specific plans to return to the North Cascades this spring to backcountry ski and, hopefully, see a wolverine. Noah is fascinated by the entire Mustelidae family, of which wolverines are the largest member. He has studied and advocated for the protection of wolverines, as well as other members of the family, including the Pacific fisher and the Humboldt marten.

12.    Center member David Hunt is interested in wolverine conservation and has long advocated for wildlife conservation, including for grizzly bears, caribou, Canada lynx, and wolverine. He has plans and permits to backpack, hike, paddle, and camp in wolverine habitat in northern Idaho and northwestern Washington this year and would love to see a wolverine on one of his trips.

13.    The Center's members have and continue to research, study,

6

observe, and seek protections for the wolverine. The Center's members derive recreational, conservation, and aesthetic benefits from the wolverine's existence in the wild.

14.   The Service's failure to meet the ESA's nondiscretionary deadlines to designate critical habitat for the threatened wolverine denies this species the protection it needs to survive, which in turn injures the interests of the Center's members. Absent protections, ongoing habitat loss and fragmentation harms the wolverine's chances to survive and achieve durable recovery.

15.   Additionally, the failure to designate critical habitat causes ecological harm in the western United States by reducing the ability of wolverines to perform their ecological role as scavengers and predators in ecosystems where the Center's members live and recreate.

16.   Therefore, the Service's failure to designate critical habitat harms and will continue to harm the aesthetic, conservation, recreational, scientific, educational, wildlife preservation, and other interests of the Center and its members. These injuries are actual, concrete injuries presently suffered by the Center's members; are directly caused by the Service's inaction; and will continue to occur

unless this Court grants relief.

17. The relief sought in this case—an order compelling the Service to designate critical habitat by a date certain—would redress these injuries by protecting the wolverine's habitat before it can be further degraded or destroyed, thereby protecting the wolverine from extinction so the Center and its members can continue to pursue their interests in the wolverine. The Center and its members have no other adequate remedy at law.

18. Defendant BRIAN NESVIK is the Director of the United States Fish and Wildlife Service and is responsible for enforcing the provisions of the ESA, including timely critical habitat designation. Mr. Nesvik is sued in his official capacity.

19. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is an agency within the Department of the Interior. The Interior Secretary has delegated his authority to administer the ESA to the Fish and Wildlife Service for terrestrial and freshwater plant and animal species, as well as certain marine species. *See* 50 C.F.R. § 402.01(b). This authority encompasses the designation of critical habitat for the wolverine.

20.     Defendant DOUG BURGUM is the Secretary of the United States Department of the Interior and the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the Act, including timely designation of critical habitat for listed species. Mr. Burgum is sued in his official capacity.

## STATUTORY FRAMEWORK

### *Endangered Species Act*

21.     The ESA "represent[s] the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its purpose is to "provide a program for the conservation of . . . endangered species and threatened species" and "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b).

22.     To serve its purpose, the ESA demands that the Service, through its authority delegated by the Secretary of the Interior, determine which species are threatened or endangered and list them as such. *Id.* § 1533(a)(1). A species is endangered if it "is in danger of

extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is threatened if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

23. When a species is listed as threatened or endangered, it receives a host of key protections designed to prevent its extinction and support its recovery, including one of the most crucial protections—the designation and safeguarding of critical habitat. *Id.* § 1533(a)(3)(A).

24. Critical habitat includes specific areas occupied by the threatened or endangered species with "those physical or biological features essential to the conservation of the species and which may require special management considerations or protection." *Id.* § 1532(5)(A) (cleaned up). Areas unoccupied by the species that "are essential for the conservation of the species" are also included within the definition of critical habitat. *Id.*

25. Critical habitat provides vital protection for species because, once designated, federal agencies are required to ensure that their actions do not "jeopardize the continued existence of any endangered species or threatened species *or result in the destruction or adverse*

*modification of [critical] habitat.*" *Id.* § 1536(a)(2) (emphasis added).

26. The ESA requires the Service to designate a species' critical habitat concurrently with its determination to list the species as threatened or endangered "to the maximum extent prudent and determinable." *Id.* § 1533(a)(3)(A)(i).

27. If critical habitat is found to be "not then determinable," the Service may extend its obligation to designate critical habitat by "not more than one additional year." *Id.* § 1533(b)(6)(C)(ii). If such a decision is made, the Service "must publish a final regulation, based on such data as may be available at that time, designating" critical habitat by "no later than the close of such additional year." *Id.*

28. The ESA also requires the Service to publish a final regulation implementing a designation of critical habitat within a year of the publication of its proposed regulation to designate critical habitat. *Id.* § 1533(b)(6)(A)(ii).

29. The ESA does not safeguard a species' critical habitat until the Service designates it. Accordingly, it is vital that the Service meticulously follow the ESA's procedures and deadlines to ensure it designates critical habitat in a timely manner.

## FACTUAL BACKGROUND

### *The North American Wolverine*

30.    The North American wolverine, a medium-sized carnivore and mesopredator, is the largest terrestrial member of the Mustelidae family. Although often known for its ferocity, the Service describes the wolverine as a "curious, intelligent, playful, and cautious" animal.



Photo Credit:  Audrey Magoun, U.S. Fish and Wildlife Service

31.    In North America, wolverines were historically distributed in much of the northern portion of the continent, extending southwards

into the Great Lakes region, the northern Rocky Mountains, and the Cascade Mountains of the United States, with historical records indicating their range extended as far south as the southern Rocky Mountains. However, during the late 1800s and early 1900s, the wolverine was extirpated in much of the contiguous United States, largely due to trapping and predator poisoning programs.

32. Following regulation of trapping, wolverine populations rebounded slightly and the species distribution expanded to inhabit a portion of their previously extirpated range. Currently, wolverines are known to reproduce in the northern Rocky Mountains in Idaho, Montana, and Wyoming and the Cascade Mountains of Washington.

33. Wolverines are adapted to travel long distances, maintain large territories in remote areas, and are snow-adapted, cold-climate animals.

34. In the lower-48 United States, distribution of the wolverine is determined by the presence of a persistent spring snowpack. Wolverines require deep snow that persists into the spring for natal denning during the denning season (February to May). These dens consist of a network of tunnels throughout landscape features including

boulders, avalanche debris, and downed logs. Wolverines also use persistent spring and summer snow beds at high altitudes for caching food in rendezvous sites for breeding females and kits.

35.     Because snowpack is key to wolverine survival, impacts from climate change are and will continue to be a significant stressor on vulnerable wolverine populations. Wolverine habitat is projected to decrease and become more fragmented due to increasing temperatures, earlier spring snowmelt, and associated loss of deep, persistent spring snowpack, primarily at lower elevations within their historical denning range. Additionally, winter recreation–which is negatively associated with wolverine habitat use–is expected to concentrate as snow-covered areas decline and human populations increase adjacent to wolverine habitat.

36.     Resource development and increased human access into wolverine habitat can have a negative impact on wolverine populations, particularly where dispersal potential for wolverines is compromised by habitat fragmentation.

37.     The Service determined that wolverines require: (1) large territories in relatively inaccessible landscapes at high elevation (1,800

14

to 3,500 meters); (2) access to a variety of food resources, that varies with seasons; and (3) physical/structural features (e.g., talus slopes, rugged terrain) linked to behavioral patterns.

38.     Wolverines have a limited adaptive capacity for environmental change: the Service notes that this is due to their specialized habitat needs, low genetic diversity and population size, narrow ecological niche, low tolerance for human disturbance, and slow reproductive rate.

39.     Wolverines in the lower-48 United States have a low effective population size, face threats due to habitat fragmentation and degradation caused by climate change, and have limited adaptive capacity due to their narrow habitat requirements. Critical habitat protections are crucial for the species to achieve durable recovery.

40.     The Service has estimated the wolverine population to be just over 300 individuals, while the effective population size–an indicator of population viability–may be less than 50 individuals. Small population numbers, along with low reproductive rates, leave wolverines particularly vulnerable.

41.     Wolverines in the lower-48 United States exist as a

15

metapopulation that requires connectivity for adequate gene flow between subpopulations. These subpopulations are small and isolated from the larger population in Canada. Dispersal between wolverine subpopulations is threatened by habitat fragmentation caused by human development, including roads.

42.     Additionally, because wolverines can be legally trapped and shot in Canada, dispersal of wolverines from Canada–an important source population for genetic exchange–is becoming less frequent. This further exacerbates the risk that wolverine populations are suffering from inbreeding, reducing their long-term viability and adaptive capacity as a species.

*Wolverine Listing and Critical Habitat*

43.     On February 4, 2013, the Service issued a proposed rule to list a DPS of the North American Wolverine in the contiguous United States. However, on August 13, 2014, the Service withdrew the proposed rule, finding that factors affecting the DPS were not as significant as initially believed. The Center and other wildlife conservation groups successfully challenged the withdrawal decision and the federal court vacated the withdrawal, yet the Service thereafter

16

issued a second withdrawal of the proposed rule, on October 13, 2020. Successful litigation by the wildlife advocates led the federal court to vacate the withdrawal again on May 26, 2022.

44.     Finally, after the multiple rounds of litigation brought by the Center and others, the Service on November 30, 2023, listed the DPS of the North American wolverine in the contiguous U.S. as a threatened species. 88 Fed. Reg. 83725.

45.     When the Service listed the wolverine as threatened under the ESA, it determined critical habitat was not determinable because "a careful assessment of the economic impacts that may occur due to a critical habitat designation has yet to occur" and stated, "we will be working to acquire the complex information needed to perform that assessment." When critical habitat is not determinable, the Service has an additional year to publish a critical habitat designation. 16 U.S.C. § 1533(b)(6)(C)(ii).

46.     The Service had a statutory duty to issue a regulation designating critical habitat within a year of listing the wolverine on November 30, 2023. As of the date of this Complaint, the Service has not designated critical habitat for the wolverine.

17

47.     As required by the ESA, 16 U.S.C. § 1540(g)(2)(C), Plaintiff provided sixty days' notice of its intent to sue over the violations of law alleged in this Complaint.

## CAUSE OF ACTION

### Failure to Designate Critical Habitat for the Contiguous U.S. Distinct Population Segment of the North American Wolverine

48.     The Center re-alleges and incorporates by reference the preceding paragraphs.

49.     The Endangered Species Act requires the Service to designate critical habitat for the contiguous United States DPS of the North American wolverine within one year of listing the species, 16 U.S.C. § 1533(b)(6)(A)(ii).

50.     The Service published a final rule listing wolverine as threatened on November 30, 2023, but more than two years later, the Service has yet to publish a rule designating critical habitat in violation of the ESA.

51.     The Service's failure to designate critical habitat for the contiguous United States DPS of the North American wolverine violates the ESA, 16 U.S.C. § 1533.

## PRAYER FOR RELIEF

18

Plaintiff respectfully requests that the Court:

(A)     Declare that Defendants violated the Endangered Species Act by failing to designate critical habitat for the contiguous United States DPS of the North American wolverine.

(B)     Order Defendants to designate, by a date certain, critical habitat for the contiguous United States DPS of the North American wolverine under the Endangered Species Act, 16 U.S.C. § 1533(a)(3)(A);

(C)     Award Plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees, under 16 U.S.C. § 1540(g)(4) or 28 U.S.C. § 2412; and

(D)     Grant Plaintiff such further and additional relief as the Court may deem just and proper.

Respectfully submitted this 26th day of February, 2026,

19

*/s/ Sarah M. Brown*
Sarah M. Brown (MT Bar No. 55888388)
Center for Biological Diversity
317 E. Spruce St.
Missoula, MT  59802
(406) 609-0923
sbrown@biologicaldiversity.org

Andrea Zaccardi (*pro hac vice* pending)
Center for Biological Diversity
P.O. Box 469
Victor, ID  83455
(303) 854-7748
azaccardi@biologicaldiversity.org

Collette Adkins (*pro hac vice* pending)
Center for Biological Diversity
P.O. Box 595
Circle Pines, MN  55014-0595
(651) 955-3821
cadkins@biologicaldiversity.org

*Counsel for Plaintiff*

20